IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEFFREY D. MAUERMAN,

    Plaintiff,

  v.

SUN LIFE ASSURANCE COMPANY OF CANADA,

    Defendant.

No. C 17-01748 WHA

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

## INTRODUCTION

In this ERISA action, defendant insurer moves to dismiss plaintiff's second claim for injunctive relief. The motion is **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

This is an action under the Employee Retirement Income Security Act of 1974 by plaintiff Jeffrey Mauerman against defendant Sun Life Assurance Company of Canada. The following is taken from the well-pled allegations of the amended complaint.

Mauerman previously worked as a project manager for non-party Anritsu Company and participated in its ERISA plan (the "Plan"), which included life insurance and long-term disability benefits funded through a group insurance policy issued by Sun Life. The policy provided for payment of long-term disability ("LTD") benefits so long as a claimant remained "unable to perform with reasonable continuity any Gainful Occupation for which he is or becomes reasonably qualified for by education, training or experience." The Plan also provided

a "life waiver of premium" ("LWOP") benefit, which continued life insurance coverage without payment of premiums so long as a claimant remained "unable to perform the material and substantial duties of any occupation for which he is or becomes reasonably qualified for by education, training or experience" (Dkt. No. 14 ¶¶ 2–5).

In 2000, Mauerman developed oral cancer and underwent radiation and chemotherapy. The disease and treatment resulted in a host of "functional restrictions" that compelled Mauerman to stop working in May 2013. In August 2013, he submitted a claim for LTD and LWOP benefits. Sun Life initially approved the claim. In November 2015, however, Sun Life terminated both benefits, claiming "the medical information currently contained in [Mauerman's] claim file [did] not provide support for ongoing restrictions and limitations that would preclude [him] performing [his] own occupation as a Project Manager, which is considered sedentary capacity." Sun Life's termination letters relied on a report by Calvin Fuhrmann, M.D., a physician in Sun Life's employ. The policy entitled Sun Life to have Mauerman examined by a physician, other health professional, or vocational expert of its choice as often as reasonably required in connection with his LTD benefits, and by a physician as often as reasonably required in connection with his LWOP benefits, but Sun Life never exercised either option. Dr. Fuhrmann never met or spoke with Mauerman but nevertheless rejected the findings and opinions of Mauerman's long-time treating physicians, who had unanimously deemed him unable to work in any occupation (*id.* ¶¶ 3, 6–8).

Sun Life's termination letters advised Mauerman that he had a right to "request in writing a review of the denial," and could "submit written comments, documents, records or other information relating to [his] claim for benefits." In December 2015, Mauerman requested in writing that Sun Life review its termination of his LTD and LWOP benefits. In support of his request, Mauerman pointed out numerous factual errors in Sun Life's termination letters and the underlying report by Dr. Fuhrmann. Mauerman also submitted supporting letters from his wife; Peter Belafsky, M.D., his otolaryngologist; and James Trapnell, M.D., his physician. Sun Life still did not have Mauerman examined in person, but instead sent his claim file to Ross Clark, M.D., an otolaryngologist, and Jose Perez, Jr., M.D., an internist, and asked each

2

consultant to limit his inquiry to "the period of November 2015 to the present." Sun Life never requested or obtained any medical records from Mauerman for that time period (*id.* ¶¶ 9–11).

Drs. Clark and Perez then issued reports that rejected Mauerman's claim for benefits based on, among other things, the absence of medical records for the time period under review and the absence of "objective evidence" to show that Mauerman suffered from fatigue. In February 2016, Sun Life relied on those reports, and the report of Dr. Fuhrmann, to deny Mauerman's request for review. With that denial, Mauerman exhausted his administrative remedies under the Plan (*id.* ¶¶ 11–13). He then brought the instant action, asserting a first claim for benefits based on the foregoing allegations and a second claim for injunctive relief. In support of the latter, the amended complaint further alleges that Sun Life has exhibited "ongoing," "persistent," and "blatantly unfair conduct" that "has degraded the security and reliability of Plan benefits and has thereby harmed the Plan and its participants and beneficiaries," citing past ERISA lawsuits against Sun Life based on conduct similar to that alleged here (*id.* ¶¶ 14–21). Among other things, the amended complaint seeks:

> An order enjoining the alleged improper acts and practices, or such other equitable or remedial relief with respect to Mr. Mauerman and the Plan as the Court may deem appropriate, including but not limited to the issuance of an injunction:
>
> • Requiring that Sun Life stop limiting its explanations in its denial letters to boilerplate reciting that a claimant may "submit written comments, documents, records or other information relating to their claim for benefits," and provide in addition thereto an adequate, detailed and understandable description of the additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> • Prohibiting Sun Life from denying or terminating claims for benefits, without affording the claimant an opportunity to be examined by a physician or other appropriate practitioner of Sun Life's choosing, in cases where the claimant's own treating physicians and/or practitioners unanimously opine that the claimant is unable to work; and
>
> • Prohibiting Sun Life from denying or terminating claims based on the absence of "objective" evidence where no such requirement is imposed by the terms of the Plan or of any insurance policy issued by Sun Life to the Plan, or where the condition under consideration is not susceptible to confirmation by "objective" testing or measurement.

3

Sun Life now moves to dismiss the amended complaint's second claim for injunctive relief (Dkt. No. 18). This order follows full briefing and oral argument.

**ANALYSIS**

**1. LEGAL STANDARD.**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when it pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court ruling on a motion to dismiss must accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008). Conclusory allegations or "formulaic recitation of the elements" of a claim, however, are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681.

Mauerman asserts his second claim for relief alternatively under Sections 1132(a)(2) and 1132(a)(3) of Title 29 of the United States Code. This order addresses each in turn.

**2. SECTION 1132(A)(2).**

Section 1132(a)(2) states, "A civil action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." Section 1109(a) provides that a fiduciary that breaches their duties under ERISA "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." This claim "gives a remedy for injuries to the ERISA plan as a whole, but not for injuries suffered by individual participants as a result of a fiduciary breach." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) (citing *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254, 256 (2008)).

To allege a claim for breach of fiduciary duty under Section 1132(a)(2), Mauerman must allege that Sun Life injured the Plan or otherwise jeopardized the entire Plan or put at risk Plan

4

assets. *See ibid.* (quoting *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1414 (9th Cir. 1988)). The amended complaint essentially alleges that Sun Life has repeatedly and in similar ways mishandled individual Plan participants' claims for benefits, including Mauerman's. As our court of appeals has recognized, however, "[a] fiduciary's mishandling of an individual benefit claim does not violate any of the fiduciary duties defined in ERISA." *Amalgamated Clothing*, 861 F.2d at 1414 (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985)).

Mauerman acknowledges that *Wise* upheld the dismissal of a similar claim where the plaintiff "state[d] conclusions about the Plan Administrators' alleged fiduciary breach — including assertions that the Plan Administrators failed to investigate, consult with qualified medical experts, or evaluate claims fairly — without alleging facts tending to show that any claim besides [the plaintiff's] was mishandled *or that the result of any such mishandling caused plan-wide injury*." 600 F.3d at 1189–90 (emphasis added). He nevertheless contends his claim is distinguishable because he alleges that Sun Life has mishandled other claims, and that Sun Life's "ongoing and persistent conduct has degraded the security and reliability of Plan benefits," which amounts to "plan-wide" injury (*see* Dkt. No. 21 at 3–4). But the same nebulous "plan-wide" injury could be alleged in the same conclusory fashion by any ERISA plaintiff complaining of a wrongful denial of benefits, inasmuch as any wrongful denial theoretically "degrade[s] the security and reliability of Plan benefits." If, as Mauerman argues, this was all it took to show "plan-wide injury" as contemplated in *Wise*, the distinction between "injuries to the ERISA plan as a whole" and "injuries suffered by individual participants as a result of a fiduciary breach" — repeatedly enforced by both the Supreme Court and our court of appeals — would be a nullity. *See, e.g.*, *Wise*, 600 F.3d at 1189.

Mauerman's untenable position finds no support in *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002 (C.D. Cal. 2011) (Judge Philip Gutierrez), a non-binding decision he erroneously cites as "Ninth Circuit law" (*see* Dkt. No. 21 at 3). In *WellPoint*, plaintiff subscribers, providers, and medical associations sued defendant insurers for breach of fiduciary duty under Section 1132(a)(2), among other things, based on allegations of

5

"a systematic effort" to conceal and knowingly use depressed rates to compute benefits for out-of-network services. Significantly, the plaintiffs alleged that this systematic breach injured "all plan subscribers by forcing them to pay more for [out-of-network] medical services than they would have if a correct [rate] was applied" and further injured "all [out-of-network] plan providers because they [lost] patients who [could not] pay the inflated out-of-pocket costs." Judge Gutierrez, applying *Wise*, declined to dismiss the claim, finding that the plaintiffs' allegations "clearly show[ed] harm to more than just the individuals bringing suit" and were "not conclusory." *Id.* at 1043–44.

The same cannot be said for Mauerman's claim here, which hinges on a conclusory assertion of "plan-wide" injury and fails to allege facts showing any harm to more than just individual Plan participants. In short, the amended complaint fails to state a claim for relief under Section 1132(a)(2).

### 3. SECTION 1132(A)(3).

Alternatively, Mauerman asserts his second claim for injunctive relief under Section 1132(a)(3), which states, "A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Our court of appeals has recognized that a claim for benefits under Section 1132(a)(1)(B) and a claim for equitable relief under Section 1132(a)(3) "can proceed simultaneously if they plead distinct remedies." *Moyle v. Liberty Mut. Retirement Benefit Plan*, 823 F.3d 948, 961 (9th Cir. 2016).

In its motion, Sun Life seems to argue that Mauerman lacks standing to pursue injunctive relief because he "has not and cannot allege facts that demonstrate a real or immediate threat of an irreparable injury" (Dkt. No. 18 at 6–7). The binding authorities cited by the motion all concern standing. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004). In its reply brief, however, Sun Life — while continuing to rely on legal authorities concerning standing — explicitly states that it

"does not contest [Mauerman's] standing" but merely argues that his "remedies are fully addressed by [Section] 1132(a)(1)(B), thereby not implicating [Section] 1132(a)(3)" (Dkt. No. 22 at 5–6). This order takes Sun Life at its word that this dispute is not about standing but about the adequacy of Mauerman's remedies under Section 1132(a)(1)(B).

Sun Life's argument, as clarified in its reply brief, has no basis in the law. Our court of appeals has expressly rejected the proposition that ERISA plaintiffs may not seek equitable remedies under Section 1132(a)(3) if Section 1132(a)(1)(B) provides adequate relief. *Moyle*, 823 F.3d at 962 (prior decisions holding "that litigants may not seek equitable remedies under [Section] 1132(a)(3) if [Section] 1132(a)(1)(B) provides adequate relief . . . are no longer binding"). This is not to say that Mauerman will ultimately succeed in obtaining the injunctive relief he seeks. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) ("We should expect that courts, in fashioning 'appropriate' equitable relief, will keep in mind . . . that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"); *see also Moyle*, 823 F.3d at 961 ("*Varity* did not explicitly prohibit a plaintiff from pursuing simultaneous claims under [Section] 1132(a)(1)(B) and [Section] 1132(a)(3)."). At this stage, however, the mere fact that he also asserts a claim for benefits under Section 1132(a)(1)(B) does not warrant dismissal of his claim for injunctive relief under Section 1132(a)(3).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is **GRANTED** insofar as the amended complaint's second claim for injunctive relief relies on Section 1132(a)(2) but **DENIED** insofar as the claim relies on Section 1132(a)(3).

**IT IS SO ORDERED.**

Dated: August 23, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7